IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| William Pinder and | ) | |
| Avaita Pinder, | ) | Civil Action No.: 2:04-21830-CWH |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| United States of America through | ) | |
| the United States Department of the | ) | |
| Treasury-Internal Revenue Service | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court on the government's motion to dismiss for the lack of subject matter jurisdiction.

**Statement of the Facts**

The dispute arises from employment taxes withheld by Sea Island Comprehensive Health Care Corporation, a non-profit corporation. William Pinder (Mr. Pinder) served as president and chief financial officer of Sea Island Comprehensive Health Care Corporation (Sea Island) from 1985 through 2000.  Sea Island provides health care to low income individuals.  During the tax periods of June 30, 1999, September 30, 1999, and December 31, 1999, Sea Island failed to remit to the Internal Revenue Service ("IRS") the employment taxes that it withheld from its employees.[1]  Mr. Pinder was president and chief financial officer of Sea Island during this time.

Mr. Pinder resigned from Sea Island in 2000.  On June 8, 2001, the IRS mailed Mr. Pinder notice that pursuant to 26 U.S.C. § 6672, it was assessing Mr. Pinder the full amount that

---

[1]  These employment taxes are referred to as trust fund taxes.  See Slodov v. United States, 436 U.S. 238, 242-43 (1978).

Sea Island owed to the IRS in employment taxes, which was $507,673.05.

This notice also advised Mr. Pinder of his right to appeal the assessment and provided a statement that if after appeal, Mr. Pinder disagreed with the assessment, he could take the case to a district court but that generally the courts will not hear tax cases unless the taxpayer has paid the tax and filed a claim for a refund. Mr. Pinder appealed the assessment.[2] Neither party specifies the date that the IRS heard Mr. Pinder's appeal, but the record reveals that an appeals conference was held on March 18, 2002. On March 19, 2003, the IRS mailed a notice and demand for the employment taxes. On April 14, 2003, the IRS mailed Mr. Pinder a notice of intent to levy, notice of the IRS's right to file a lien, and notice of Mr. Pinder's right to a hearing to contest the action.

The plaintiffs filed joint returns for the 1999 and 2000 tax years, and overpaid income taxes in the amounts of $1,645.90 in 1999 and $5,848.11 in 2000.[3] On April 21, 2003, the IRS mailed the plaintiffs notice that it had withheld these overpayments and applied them towards taxes that the government's record showed that Mr. Pinder owed. On April 30, 2003, the IRS filed a tax lien against Mr. Pinder in the amount of $502,445.08.

On May 6, 2003, pursuant to 26 U.S.C. § 6330, Mr. Pinder requested relief from the levy. Mr. Pinder raised the following issues in the request: (1) Sea Island has sufficient resources to pay the taxes; (2) the government has not levied Sea Island's assets for the collection of the payroll taxes; (3) Ronald Lacey, an IRS agent, decided not to levy Sea Island's assets because of

---

[2] Neither the government nor the plaintiffs reveal the content of this appeal. The government contends that the employment tax assessment was sustained.

[3] These amounts include interest earned on overpayment.

Lacey's relationship with Sea Island individuals who were Mr. Pinder's adversaries in an ethics dispute; (4) Lacey's action against Mr. Pinder was based on Lacey's dislike of Mr. Pinder and grounded in racism; (5) Sea Island was selling assets, and the proceeds could be applied to the payroll tax debt; (6) Lacey has stated that he will only levy Mr. Pinder's assets to recover the payroll taxes; and (7) the government did not send Mr. Pinder notice of the payroll tax assessment as is required by section 6672(b).

On April 6, 2004, the IRS advised Mr. Pinder that a hearing was scheduled for April 29, 2004. The IRS also advised Mr. Pinder that it was not obligated to collect the taxes from Sea Island, that the government sent Mr. Pinder notice of the employment tax assessment on June 8, 2001, and again on March 19, 2003. In addition, the government advised Mr. Pinder that he could propose collection alternatives but in order to do so, he must be current with his tax return filings, and at the date of the notice, he had not filed his 2001 or 2002 tax returns.

On June 8, 2004, a telephone conference between Mr. Pinder's representative and Appeal Officer Mary Green ("Green") was held. Mr. Pinder faxed unfiled copies of his 2001 and 2002 tax returns to Green. Green states in an affidavit that Mr. Pinder did not offer collection alternatives and only suggested that the government collect the employment taxes from Sea Island. On July 9, 2004, the government issued a notice of determination. Officer Green's determinations were: (1) that the IRS sent a letter proposing the employment tax assessment and this notice preceded a demand for payment by 60 days in accordance with section 6672(b), (2) that section 6330(c)(2)(B) precluded Mr. Pinder's challenge to his tax liability, (3) that Mr. Pinder did not present collection alternatives, and (4) that the proposed levy balanced the need for efficient collection of taxes.

## Procedural History

On August 9, 2004, the plaintiffs filed a complaint against the government seeking the removal of a lien filed by the IRS and the recovery of $5,848.11 from the 2000 return, $1,645.90 from the 1999 return, and $500.00 of income tax overpayments made to the IRS but credited against the employment tax assessed against Mr. Pinder.[4]  On April 20, 2005, the plaintiffs filed a motion for a refund.  On May 6, 2005, the government responded and filed a cross motion to dismiss for the lack of jurisdiction or in the alternative for summary judgment.  On June 13, 2005, the Court heard the parties' motions.  At the hearing, the parties informed the Court that Sea Island was liquidating a portion of its land holdings, and the proceeds would be used to pay the employment tax liability.  The Court continued this action until September to allow Sea Island the opportunity to pay the taxes owed.

On August 12, 2005, the plaintiffs filed a motion to amend their complaint.  The amended complaint challenged the following determinations made by the IRS at the due process hearing:

1.    The appropriateness of the collection action;
2.    The collection alternatives offered by the taxpayer;
3.    That letter "1153" proposing the liabilities did not follow IRC section 6672;
4.    Balancing efficient collection and intrusiveness were all without support of any credible evidence and based upon capriciousness, abuse of discretion, and selective prosecution.

In addition, the amended complaint requests the following relief:

1    The Court declare the claims of the United States invalid;
2.    The Court declare that the seizure of the Avaita Pinder's property is void and refund the same with interest;
3.    The Court declare that Sea Island has primary responsibility for the trust fund taxes;

---

[4] The income tax overpayments did not include $500.00, and the plaintiffs do not explain the presence of this figure.

4.      The Court declare that the United States has no interest in the plaintiff's real or personal property.

In December 2005, the parties informed the Court that the IRS had collected the

remaining balance of the employment taxes from Sea Island.  However, this remaining balance

included a deduction in the amount the IRS had withheld from plaintiffs' 1999 and 2000 tax

returns.  On February 3, 2006, the Court held a status conference to determine the parties'

positions after the employment tax liability was satisfied.  At the hearing, the plaintiffs indicated

that they wanted to proceed with their claims for a refund.

**I.  Jurisdiction to order the IRS to refund the 1999 and 2000 tax overpayments.**

In suits seeking a tax refund, the government has qualified its waiver of sovereign

immunity by enacting section 7422(a).  United States v. Dalm, 494 U.S. 596, 601 (1990).

> No suit or proceeding may be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected . . . until a claim for refund or credit has been duly filed with the Secretary according to the provisions of law in that regard and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a).  This prerequisite to a court's jurisdiction over a tax refund action allows

the IRS to consider and dispose of a taxpayer's claim without the expense and time involved in

litigating a suit.  Beckwith Realty, Inc. v. United States, 896 F.2d 860, 862 (4th Cir. 1990).

The plaintiffs have paid a divisible portion of the employment tax assessment and

satisfied the condition of prepayment before bringing an action, but the plaintiffs do not allege

that they filed effective claims for refunds as is required by section 7422(a).[5]  Consequently,

_____

[5]   The Fourth Circuit Court of Appeals has allowed informal claims, which do not comply with Treasury regulations, to qualify as a claim for a refund when such claim places the IRS on notice of the merits of a tax dispute.  See Miller v. United States, 949 F.2d 708, 711 (4th Cir. 1991) and Beckwith Reality, Inc., 896 F.2d at 863-864.  Although the plaintiffs requested a

section 7422 prevents a suit to recover the employment tax collected from the plaintiffs.

## II.  Wrongful levy.

The IRS provided the plaintiffs notice of intent to levy on April 14, 2003.  On April 21, 2003, the plaintiffs received notice that the IRS was applying their tax overpayments for the 1999 and 2000 tax years against the employment tax assessment.  26 U.S.C. § 6330(a)(2) requires 30 days notice before levy.  The plaintiffs contend that the IRS levied their tax overpayments before 30 days had expired.

Applying a refund to satisfy an existing tax obligation is not a levy but an offset.  Boyd v. Commissioner of Internal Revenue, 124 T.C. 296, 300 (2005).  An offset is the common law right of creditors to "apply the unappropriated moneys of the debtor in the hands of the creditor in extinguishment of the debts of the debtor's due to the creditor."  Id.  The IRS is authorized to credit a tax overpayment against any tax liability.  26 U.S.C. § 6402.

The provision preventing the IRS from collecting through levy prior to 30 days notice is inapplicable to collection by offset.  26 U.S.C. § 6331(i)(3)(B)(i); see also 26 C.F.R. § 301.6330-1(g)(2)(notice requirements found in section 6330 do not apply to collection by offset.)  The IRS did not levy the overpayments made in the 1999 and 2000 tax years.  Rather, pursuant to section 6402(a), the IRS offset Mr. Pinder's existing tax liability owed for the employment taxes against the 1999 and 2000 overpayments claimed in his tax return filed jointly with his wife.  Consequently, the plaintiffs may not bring an action for wrongful levy.

The plaintiffs have not alleged any authority granting the Court jurisdiction to order the

---

hearing under section 6330 to challenge the proposed levy, the plaintiffs have not produced writings sufficient to establish informal notice of a tax refund claim for the 1999 and 2000 overpayments to the IRS.

IRS to refund the tax overpayments made in the 1999 and 2000 tax years.  Accordingly, the

Court grants the government's motion to dismiss this action for the lack of subject matter

jurisdiction.


   **AND IT IS SO ORDERED**.

                _____

                **C. WESTON HOUCK**
                **UNITED STATES DISTRICT JUDGE**

March 30, 2006
Charleston, South Carolina